# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KAYLEN LERON MCDILE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:24-CV-00609 JMB |
| STATE OF MISSOURI, et al., | ) ) ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

Before the Court is the motion of plaintiff Kaylen Leron McDile, a pretrial detainee at St. Charles County Detention Center, for leave to proceed in forma pauperis in this civil action. Having reviewed the motion and financial information, the Court will grant the motion and assess an initial partial filing fee of $55.10. *See* 28 U.S.C. § 1915(b)(1). Additionally, the Court will dismiss this action at this time. *See* 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $55.10, and an average monthly balance of $28.75. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $55.10, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

This Court is required to review a complaint filed in forma pauperis and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," courts should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, or interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**Background**

The following information is relevant to the claims plaintiff raises in the complaint. The information is taken from public records published on Missouri Case.net in plaintiff's Missouri State criminal case, *State v. McDile,* No. 2311-CR01046 (11th Jud. Cir., St. Charles County Court). This Court takes judicial notice of these public state records. *See Levy v. Ohl,* 477 F.3d 988 (8th Cir. 2007).

On March 22, 2023, plaintiff was charged by criminal complaint in St. Charles County Circuit Court with assault in the first degree and armed criminal action. *State v. McDile*, No. 2311-CR01046 (11th Jud. Cir., St. Charles County Court). Plaintiff was charged with shooting another individual, D.L., at the time he was under the age of 18. *Id.*

Detective Corporal Grarup with the Wentzville Police Department completed a probable cause statement in the case on March 16, 2023, stating as follows:

3

> On 11-26-2022, at 1301 Hidden Valley Apt B, Wentzville, MO 63385 in St. Charles County, MO., McDile, Kaylen did:
>
> Det. Wightman responded to SSM St. Joseph's West (100 Medical Plaza, Lake St. Louis, MO 63367) to interview a shooting victim identified as D.L. D.L stated he was in the hospital being treated for a gunshot wound to his left thigh. D.L. stated he was shot by McDile in front of McDile's residence at 1301 Hidden Valley Dr. Apt B. D.L. stated he was at the next-door apartment, Apt. A, to buy marijuana when McDile came from the rear of the residence with a gun and began shooting at him. D.L. stated he then ran through McDile's residence as it was the only open door. D.L. stated he ran through the apartment and out the back door to the woods behind the residence. D.L. stated he then entered a vehicle being driven by his girlfriend identified as M.M. D.L. stated prior to the shooting he had pulled up to the parking lot of the apartment and McDile was in the vehicle behind him and pulled up to the residence at the same time as D.L. D.L. stated when they arrived, McDile exited his vehicle and wanted to fight with D.L. over an incident that occurred earlier at Walmart. D.L. stated he exited his vehicle and both of them began punching one another. D.L. stated he had knocked McDile to the ground and he then ran away to his residence. D.L. stated he thought that was the end of it but then McDile appeared from the back of the apartment with a firearm. D.L. stated he did not see McDile return with the firearm until he began shooting. Det. Wightman spoke with officers on scene who stated there was video footage of the shooting from a camera located on the neighbor's residence at 1301 Hidden Valley Dr. Apt A. The video shows D.L. in front of the apartment along with McDile's brother identified as C.M. The video shows McDile enter from the southeast side of the building and fire what appears to be two (2) shots from a semi-automatic AR style pistol striking D.L. once. D.L. is seen entering McDile's residence and McDile follows him running with a firearm in his hands. It should be noted that C.M. was also in the front of the residence and witnessed the shooting. C.M later identified McDile as the shooter. It should be noted that D.L. wishes to pursue charges against McDile.

*See id.*

Although plaintiff was still a juvenile at the time the alleged offenses were committed, an Order for Certification to Allow Prosecution of plaintiff as an adult was filed with the underlying criminal complaint. *Id*. The Court found, upon initial review of the charges that there were "reasonable grounds to believe that the defendant" was a danger to the crime victim, the community or another person, and the bond in the case was set for $500,000, cash only. On April 4, 2023, plaintiff's counsel moved to reduce bond at a seven-day bond hearing. *Id.* After reviewing

4

the issues at the hearing, the Honorable Jeffrey J. Sandcork denied defense counsel's motion to reduce bond. *Id.*

An Information was filed on June 6, 2023, by Prosecuting Attorney Stephan Lawhorn, charging plaintiff with the same charges as those in the criminal complaint. Plaintiff waived his right to a preliminary hearing. *State v. McDile*, No. 2311-CR01046-01 (11th Jud. Cir., St. Charles County Court). Although an arraignment was scheduled on various dates (and then rescheduled), on July 31, 2023, plaintiff eventually waived his right to an arraignment. *Id*. On April 23, 2024, plaintiff filed a pro se motion to reduce bond despite being represented by counsel Jeffrey Esparza. Plaintiff additionally filed a pro se motion to dismiss the Indictment on May 9, 2024. *Id.* However, a Superseding Indictment charging plaintiff with felony assault in the first degree, armed criminal action and felony tampering with a victim in a felony prosecution was filed on May 24, 2024. *Id.*

The case is currently set for trial on October 8, 2024, and plaintiff is presently incarcerated at St. Charles County Detention Center. *Id.*

**The Complaint**

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 against the State of Missouri and Prosecutor Stephan Lawhorn. Plaintiff sues defendant Lawhorn in his official capacity only.

Plaintiff alleges that he has "been denied an affordable bond" and had his right to trial denied. Plaintiff complains that during his time incarcerated at the St. Charles County Detention Center he has missed his high school graduation, lost his job and been denied an education. He feels he has been denied the right to "grow as a person as a man."

For relief in this action, plaintiff seeks monetary damages.

5

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the reasons explained below, the Court finds that plaintiff's claims in this action against the State of Missouri are subject to dismissal for failure to state a claim. Additionally, plaintiff's claims against Prosecutor Stephan Lawhorn, in his official capacity, are barred by prosecutorial immunity.

**A. Plaintiff's Claims Against the State of Missouri**

First, to the extent that plaintiff seeks money damages, the State of Missouri is not a 42 U.S.C. § 1983 "person." "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because plaintiff is missing an essential element of a § 1983 action, his claim for money damages against the State of Missouri must be dismissed.

Second, sovereign immunity also protects the State of Missouri from plaintiff's claims for money damages. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh

Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also bars a claim for money damages against a state official sued in an official capacity. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will,* 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to

7

believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property"). For this reason, as well, plaintiff's claim for money damages against the State of Missouri must be dismissed. For all these reasons, plaintiff has not demonstrated the liability of the State of Missouri.

### B. Plaintiff's Claims Against Prosecuting Attorney Stephan Lawhorn

Plaintiff's allegations against Stephan Lawhorn fail because they are based on actions he has taken while initiating and pursuing a criminal prosecution and representing the State of Missouri and St. Charles County during the course of prosecuting plaintiff. Prosecutor Lawhorn is therefore immune from allegations relating to such claims. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process"); *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same). To the extent plaintiff seeks to paint Prosecutor Lawhorn as acting with improper motive, allegations of improper motive do not save plaintiff's claims. *See Imbler*, 424 U.S. at 427-28 (there is no fraud exception to prosecutorial immunity); *see also Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (a prosecutor is immune from suit even

if he knowingly presents false, misleading or perjured testimony, or withholds or suppresses exculpatory evidence).

Plaintiff alleges that the defendants have violated his constitutional rights by keeping him incarcerated since the end of March of 2023 either without bond or with an excessive bond. However, federal courts should not interfere, absent extraordinary circumstances, with a state's "pending judicial processes prior to trial and conviction, even though a prisoner claims he is being held in violation of the Constitution." *Sacco v. Falke*, 649 F.2d 634, 636 (8th Cir. 1981). Due to this reluctance to interfere, and in the interest of comity between state and federal courts, a plaintiff is required to exhaust state remedies before seeking federal court relief. *See Neville v. Cavanagh*, 611 F.2d 673, 675 (7th Cir. 1979). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

There is no indication that plaintiff ever attempted to have his bond conditions reviewed by Missouri's appellate courts pursuant to Missouri's Supreme Court Rules. He has not established any "special circumstances" that would allow him to avoid the exhaustion requirement. *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (stating that "exceptions to the exhaustion requirement apply only in extraordinary circumstances" and that the burden is on petitioner to demonstrate such circumstances). The Court declines plaintiff's request to rule upon the constitutionality of his bond before his motions have been decided by the trial court and before he has sought review from the state appellate courts.  As such, plaintiff's excessive bond claim will be dismissed.

## Conclusion

Having thoroughly reviewed and liberally construed the complaint, the Court finds that plaintiff's claims are subject to dismissal based on the aforementioned analysis. The Court can

9

envision no amendment to the complaint that would cause it to state a valid claim for relief. Therefore, the Court will dismiss this action at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 5] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, Plaintiff must pay an initial filing fee of $55.10. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate Order of Dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this Order of Dismissal would not be taken in good faith.

Dated this 7th day of June, 2024

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE